Nott, J.,
dissented.
[*226 ^Whether the consul for a foreign State is amenable to the local jurisdiction of the country in which he resides, for a violation of the laws of that country, is a question on which I shall give no opinion, because I consider it one belonging to the courts of the United States to decide, and not to this Court. But that the jurisdiction belongs exclusively to the Courts of the United States, is too clear to my mind to admit of hesitation. And whether I look to the particular phraseology of the constitution, to the class of eases with which this is associated in that instrument, or to the general policy of the measure, I am equally led to that conclusion.
The individual States, taken unconnected by the articles of confederation, would be considered as separate sovereign, and independent States.
The government of the United States considered in its federal capacity, is constituted of that portion of the sovereignty which the individual *508 States have surrendered or thrown into one common stock, for the benefit of the whole. That government therefore is as sovereign and independent over all matters thus surrendered, as the government of each State is over those which are retained.
It would seem to result as a necessary consequence of a government so organized, that there must be three distinct classes of judicial cases:
1. Those of a general nature, involving the interests of the United States in their federal or aggregate capacity.
2. Those of a mixed character, involving the common and mutual interests of the general and State governments, &c.
3. Those of a local nature, which belong exclusively to the individual States.
Over the first class, the Courts of the general government must be permitted to exercise exclusive jurisdiction,
*Over those of the second, they possess a jurisdiction concur- ‘ J rent with the several States.
And the jurisdiction of the third belongs exclusively to the Courts of the individual States.
Having thus seen that these three classes of cases must necessarily exist, the nature of the cases would, in most instances, enable us to refer them to the proper jurisdiction without the aid of the constitution. But the framers-of that instrument having considered it a matter of too much importance to be left to construction, have distinctly marked out, by metes and bounds, the jurisdiction to which each shall belong. The second section of the third article of the constitution provides, that the judicial power of the United States shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and. treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, public ministers, and consuls; in all cases of admiralty and maritime jurisdiction; to controversies between two or more States ; between a State and the citizens of another State ; between citizens of different States ; between citizens of the same State, claiming lands under grants of different States, and between a State and the citizens thereof, and foreign States, citizens, or subjects. This section embraces the two first classes above mentioned. It was unnecessary to notice the third, because all cases not delegated to the Courts of the United States, belong exclusively to those of the several States. Those belonging to the first class are all cases arising under the constitution, the laws of the .United States, and treaties made, or which shall be made, under their authority ; all cases affecting ambassadors, public ministers, and consuls, and all cases of admiralty and maritime jurisdiction. The second class includes all the other cases which follow in the succeeding part of the section.
I have had occasion heretofore to consider this clause of the constitution. But as that opinion has not been published, I cannot by reference *2281 ^ sbow the train of Reasoning to which I must now resort in J support of my opinion. And I shall therefore be under the necessity of repeating what I have already said on the same subject.
The distinction between the two classes will be discovered in the language of the constitution. The judicial authority of the United States is extended to all those of the first class. In relation to the second the *509 word all is omitted. If the jurisdiction of the United States Courts extends to all of the first class, then there is none to which it does not extend, and the jurisdiction must be exclusive.
To this it is answered, that the addition of that word does not enlarge, nor the omission of it restrict, the meaning of the words with which it is connected. That it may be stricken out of the first class, or added to the second, and the meaning will be precisely the same. I may, perhaps, admit, that if it had been carried through the whole section, it would not have given the United States Court exclusive jurisdiction over all the cases therein specified ; and that the omission of it altogether, might no.t have given the State Courts concurrent jurisdiction in all. But it is the addition of it in one part, and the omission of it in another part of the same section, that constitutes the distinction.
I have assumed a position which, I suppose, will not be denied, that there are some cases which belong exclusively to the Courts of the United States. And it must be supposed that it was intended to give the constitution some characteristic feature by which those cases might be distinguished.* And if it be by the addition or omission of a single word, and the intention be apparent, we must give effect to it. When we see it studiously repeated in relation to all the first enumerated cases, and studiously omitted when speaking of the second, we cannot suppose that such a change of phraseology was made without some object. It would be doing injustice to the venerable authors of that instrument, every word of which may be looked upon almost as a monument of prophetic wisdom, to suppose that it happened by accident, and not by design. *And if it may produce the effect which I have supposed, and r*o9q can produce no other, then we have a right to conclude, and, L indeed, I think we are bound to conclude, that that alone was the object, and no other. I apprehend that it will be admitted that all the other cases comprised in the same class belong exclusively to the Courts of the United States. And if so, I cannot conceive upon what principle this .particular case can be denied that privilege.
If, however, I am mistaken in supposing that that point will be conceded, I must once more recur to the cases there mentioned, and, I think, from an attentive perusal of them, the conclusion will appear inevitable. The first are cases arising under the constitution ; the laws of the United States, and treaties made under their authority. When the United States, in a federal capacity, assumed the powers of sovereignty, it became necessary that they should possess all the means of carrying those powers into effect. That the operations of every government should be carried on through the instrumentality of its own agents, is an essential attribute of sovereignty. And for that purpose the powers of the Legislature and judiciary must be co-ordinate and correlative. It was particularly proper, therefore, that all those cases should be given exclusively to the courts of the United States; otherwise the general government would be indebted to the courtesy of the States, for the exercise of their most important functions. That questions of this sort may come incidentally before the State Courts, and must be decided by them, I have no doubt. Such were the cases of Potter and Bulow v. The City Council, and Alexander v. Gibson, 1 Nott & M’Cord, 527, *510 480, decided, in this Court. But I presume it will not be contended that we have a direct authority over such cases.
The next description of cases embraced in this catalogue, are cases affecting ambassadors, public ministers, and consuls. To these it is answered, that ambassadors and public ministers are not amenable even Courts of the United States. That is a question on * which it is not my intention to give any opinion. It is sufficient for my purpose, that those who made the constitution supposed that such cases might arise, and made provision for them by consigning them exclusively to those Courts. Can it be supposed that the persons, to whom was confided the important duty of forming the constitution, did not foresee the difficult and delicate questions which would necessarily arise out of our relations with foreign nations ? Ambassadors and public ministers represent the persons of their sovereigns. Their business is with the United States, and not the individual States. And it would have been unwise and improper to have hazarded the peace of the country, by subjecting their rights or persons to the jurisdiction of the State Courts, over which the general government had no control. It was equally for the peace and security of the country and foreign ministers, that all cases affecting them should be placed in the hands where it appears to me most manifest that they have been placed.
The last description of cases included in this list, is cases of admiralty and maritime jurisdiction. These cases, springing out of the source from whence most of our collisions with foreign nations might be expected to arise, it was equally necessary and proper that those also should be confined to the tribunals of the general government. But I believe it is so universally admitted that the State Courts have no jurisdiction over admiralty and maritime cases, that I will not dwell longer on the subject.
I have now gone through with all the cases over which I consider that the Courts of the general government have exclusive authority. And when I find consuls included in the same catalogue, and coupled in the same sentence with ambassadors, and other foreigu ministers, I feel bound to consider them as entitled to the same privileges. I do not mean the same privileges allowed by the laws of nations to ministers of a higher grade, but to the privilege afforded them by the constitution, of being -, tried in the Courts of the United *States. The same principle of -1 J policy which prescribed the jurisdiction of the other enumerated cases, equally required that the consuls should be included also. They are the public agents of foreign nations. They have many important public duties to perform. They constitute a link in the chain of our foreign relations, which ought not to be broken by the interference of State authority.
We have had a recent instance of the deep interest which governments take in the privileges of their foreign agents, in the case of the American counsul, who was lately imprisoned in Spain. And we cannot suppose that other nations take less interest in their safety than our own. It is a case in which the pride and honor of a nation is concerned, and respecting which it cannot feel indifferent. Indeed, I consider it a question on which the peace of the United States may so much depend, that I cannot but feel some regret that any difference of opinion should exist in this Court on the subject. This defendant, I understand, is now the consul *511 of France, in another State. Ought he to be drawn from his public duties to save his recognizance from forfeiture ? Or be detained from them to atone for his offence by any authority under the State ? Suppose he should be imprisoned, and his government should think he had been'wronged ? Redress would be sought for from the general government, and not from this. If the case was in a Court of the United States, the President, from motives of policy, and for the sake of peace, might discharge the prosecution, remit the recognizance, or pardon the offence. But he can have no control over it, if the jurisdiction belongs to the State Courts. As far, therefore, as policy can influence the decision, it is strongly opposed to the power which we are about to exercise.
There were but two grounds taken in the argument on which I felt any difficulty. The first was, that the immunity allowed by the constitution to consuls relates only to transactions connected with their consular functions. The second, that until Congress shall *make some provi- |-„.9q9 sion to enable the Courts of the United States to exercise their authority, the jurisdiction remains in the State Courts.
But a moment’s reflection dissipated all my doubts on the first point. It not only presupposes a right to inquire into the fact of his consulship, but also of the extent of his powers and the duties of his office. That is to say, the Court may give itself jurisdiction by stripping him of his consular character, or limiting his powers, and then try him for his offence. “ Gastigatque, auditque dolos.”
With regard to the second question, I am not satisfied that Congress has not made all the provision necessary to enable the Courts of the United States to exercise the jurisdiction vested in them by the constitution, if any such provision was necessary. But it appears to me a question not material to the decision. If the constitution has given the jurisdiction exclusively to the general government, the omission to exercise it cannot give jurisdiction to the States. Suppose Congress had omitted to provide for the punishment of treason or piracy, would the State Courts thereby acquire jurisdiction over those offences ? I apprehend not.
From any view, therefore, which I have been able to take of the question, I have seen no reason to change the opinion given in the Court below. Indeed, my confidence in that opinion is increased by the support which it has derived from the very able view taken of a similar question by Chief Justice Tilghman, in the case of Commonwealth of Pennsylvania v. Kosloff. (2 Am. Reg. 340.) See, also, Mannhardt v. Soderstrom, (1 Bin. 138.)
I am disposed to support the sovereignty of the States, but not to invade that of the United States, nor to violate the relations subsisting between them. I am afraid that the jarring element of which our confederacy is composed, are bound together by but feeble bands at best; and I am not disposed to weaken them by assuming an authority which we do not *possess, or even wishing for a jurisdiction which we pgao cannot safely exercise. L
I am of opinion, therefore, that this motion ought not to prevail.
Johnson and G-antt, JJ., concurred.
FT. B. — The judges were equally divided in the above case, but as by Act of Assembly, “the opinion of the judge who tried the cause, (Mr. *512 Justice Nott.) shall not be allowed, and shall have no effect in the final determination of the case,” Mr. Justice Huger’s opinion is the judgment of the Court.