## SYMONS BROADCASTING CO. v. FEDERAL RADIO COMMISSION (RADIO SERVICE CORPORATION, Intervener).

### No. 5757.

Court of Appeals of the District of Columbia.

Argued Feb. 7 and 8, 1933.

Decided March 6, 1933.

Rehearing Denied March 18, 1933.

Noel S. Symons, of Buffalo, N. Y., and Paul M. Segal, of Washington, D. C., for appellant.

D. M. Patrick, Ralph L. Walker, and Fanny Neyman, all of Washington, D. C., for Radio Commission.

Horace L. Lohnes and H. L. McCormick, both of Washington, D. C., for intervener.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This appeal involves a controversy between two radio broadcasting stations. It should have been decided, as we think, not on the mere question of priority of application as between the two stations but rather on the basic standard which Congress had directed shall apply, namely, the public interest and convenience.

Appellant, Symons Broadcasting Company, is located at Spokane, Wash., and operates as station KFPY. Intervener is located at Pocatello, Idaho, and operates as station KSEI. For the sake of clarity we shall speak of appellant as the Spokane station and of intervener as the Pocatello station. The Spokane station had been operated for ten years on a frequency 1,340 kc. The Pocatello station had some time prior to April 4, 1932 (precisely when does not appear), obtained a construction permit designating for its use the frequency 900 kc. On April 13th of that year it applied to the commission for a modification of its construction permit to specify the frequency 890 kc., and on June 2d, and before any action was taken by the commission, it amended this petition but not in respect to the frequency desired. On June 10th the commission granted it a modified construction permit specifying 890 kc., and on June 24th the grant was made final by assignment to it of that frequency. The Spokane station on April 9th applied for a modification of its license to change its frequency from 1,340 kc. to 1,260 kc. At that time it could not apply for 890 kc. because that frequency was then designated as "Canadian shared," and as its station was less than 250 miles from the Canadian border the frequency was not available to it, but in May, 1932, 890 kc. was released to the United States by agreement with Canada as a regional frequency, and this brought it within reach of the Spokane station. On June 6th, therefore, the Spokane station amended its former application to the extent that it designated the frequency 890 kc. rather than the frequency 1,260 kc. for which it had formerly applied. Its application in this respect was filed June 7th with the supervisor of radio in Seattle, was promptly forwarded to the commission and received by it June 13th, just three days after the commission had granted the amended application of the Pocatello station for a construction permit and eleven days before the commission made the final

and definite assignment of the 890 kc. frequency to the Pocatello station. The Spokane station protested this latter permit on June 27th and June 28th, on the ground the grant to the Pocatello station was made while its application for the same frequency was pending and without notice to it or opportunity on its part to be heard.

On behalf of the Pocatello station it is insisted that the grant made by the commission June 10th, having been made in advance of the receipt by the commission at its headquarters in the District of Columbia of the application of the Spokane station, was a final determination of the right of the Pocatello station to the frequency assigned it, and that the second grant of June 24th followed as of course. On the other hand, the Spokane station insists that the commission, by its own rules, was not required by reason of the June 10th construction permit to Pocatello station to confirm the grant made therein but might in the public interest, after the completion of the construction therein provided, have issued to the Pocatello station a license for different power or different frequency or hours. It is also insisted that the application of the Spokane station, having been filed in accordance with the rules of the commission with the radio supervisor in Seattle on the 7th of June, should have been considered by the commission as then filed even though actual notice of it was not brought to the attention of the commission until its receipt in the District of Columbia some four or five days later, but that in any event, having been duly received prior to the final grant to the Pocatello station, that grant should not have been made pending a hearing.

 We agree with the Spokane station that the preliminary grant to the Pocatello station made June 10th was conditional and not final, and this is true under the commission's own rules, and we likewise agree that the Spokane station's application having been received by the commission prior to the final grant, the latter grant was made with notice of the claim of the Spokane station. In these circumstances the Spokane station's protest was filed in accordance with the commission's rules and entitled it to a hearing. The authority for these two conclusions may be found in the commission's rules 44 and 45. In the former it is provided that the commission may grant a license upon receipt of an application in proper form and without hearing but that a grant so made is subject to the right of the commission to suspend or re-

consider, and the commission's rule 45 provides that, where an application is granted in whole or in part without hearing, any person or corporation aggrieved and whose interests are adversely affected by such temporary grant may obtain a hearing before the commission by filing a protest within twenty days.

In this case the Spokane station in apt time filed its protest. It was certainly an aggrieved party, because it had duly filed an application for the same frequency as that sought by the Pocatello station. From the time the same was lodged with the supervisor in Seattle it was "pending before the commission." But notwithstanding this the commission ignored the protest and refused to grant a hearing, and this, we think, was arbitrary and in violation of its rules. And in addition to this, we think it not untimely to say that in granting and refusing applications for licenses, where two or more stations are applicant for the same frequency, it is the duty of the commission to grant either party asking it a hearing on due notice, for otherwise there is a denial of due process and a substitution in its place of arbitrary power, and that, of course, may not be countenanced. There is nothing in the record in this case by which we are able to determine the rights of the parties on the merits. The commission has made no finding of facts. All that we know is what appears from the pleadings, and these show that the Spokane station is located in a thickly populated region, whereas the Pocatello station is located in a sparsely settled region. Which will best serve the public interest in these circumstances is for the commission's decision, but this decision must be based on evidence produced before it at a hearing of which both parties in interest have notice.

This makes it our duty to reverse the decision of the commission in so far as it grants the frequency in dispute without having given the appellant an opportunity to be heard and to remand the case to the commission with instructions to hear the protest and, without regard to its prior action in the matter, to grant the disputed frequency to whichever of the two stations will best serve the public interest, convenience, and necessity.

Reversed and remanded to the commission for further proceedings in accordance with this opinion; costs here to be divided between appellant and intervener.

Reversed and remanded.