**UNITED STATES v. PUBLIC UTILITIES COMMISSION OF DISTRICT OF COLUMBIA et al.**

No. 8995.

United States Court of Appeals District of Columbia.

Decided Sept. 24, 1945.

Mr. S. R. Bowen, of Washington, D.C., with whom Messrs. H. W. Kelly and Wm. K. Laws, both of Washington, D. C., were on the brief, for appellee, Potomac Electric Power Company. Mr. Robert E. Lee Goff, of Washington, D. C., also entered an appearance for appellee, Potomac Electric Power Company.

Mr. Marvin C. Taylor, of Boston, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of Court, with whom Assistant Attorney General, Francis M. Shea, and Messrs. Edward M. Curran, United States Attorney, of Washington, D. C., and Arnold Levy, Special Assistant to the Attorney General, were on the brief, for appellant.

Messrs. Richmond B. Keech, Corporation Counsel, District of Columbia, and Lloyd B. Harrison, Assistant Corporation Counsel, both of Washington, D. C., entered ap-

pearances for appellee, Public Utilities Commission of the District of Columbia.

Mr. James W. Lauderdale, People's Counsel, of Washington, D. C., also entered his appearance.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

MILLER, Associate Justice.

The United States is seeking, in this case, to establish its right to appeal—as a person or corporation affected—from an order of one of its own lesser creatures, an administrative agency. In doing so, it faces a handicap which has been built up, largely at its own insistence, in many decisions which have denied such rights[1] to private persons and corporations, or which have so severely limited them as to prevent decision on the merits;[2] sometimes even to the extent of making impossible a consummation of legislative policy and an achievement of Congressional intent.[3]

In order that the issues of the present case may be made to appear clearly, it is necessary to set out the following chronology of the proceedings. At the annual

[1] Interstate Commerce Commission: Pittsburgh & W. V. Ry. v. United States, 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980; Alexander Sprunt & Son, Inc., v. United States, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216; Moffat Tunnel League v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069. Labor Board: Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees v. United Transport Service Employees, 320 U.S..715, 64 S.Ct. 260, 88 L.Ed. 420, and cases cited; see American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 412, 60 S.Ct. 300, 84 L. Ed. 347; Inland Empire Dist. Council, Lumber and Sawmill Workers Union v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 13 U.S.L.Week 4479. Coal Commission: City of Atlanta v. Ickes, 308 U.S. 517, 60 S.Ct. 170, 84 L.Ed. 440. Secretary of Labor: Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. Secretary of Treasury: Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. Secretary of Agriculture: Wallace v. Ganley, 68 App.D.C. 235, 95 F.2d 364; Green Valley Creamery, Inc. v. United States, 1 Cir., 108 F.2d 342, and cases cited. Public Works Administrator: Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374. Tennessee Valley Authority: Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543.

[2] Cf. Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869.

[3] See, for example, Lukens Steel Co. v. Perkins, 70 App.D.C. 354, 107 F.2d 627; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. In this case, Congress by appropriate legislation provided for a determination, by the Secretary of Labor, of *localities*, which should thereafter constitute territorial units for fixing minimum wages to be paid on certain contracts with the government. The Secretary determined—contrary to the clear intent of Congress—that great sections of the country constituted localities, among others, one extending from the remote rural areas of Maine through the highly industrial areas of New York, New Jersey and Pennsylvania, to and including the District of Columbia. This court decided that the determination was improper, a distortion of Congressional intent, operating to defeat the Congressional purpose and to upset many harmonious existing adjustments between labor and management which had been worked out satisfactorily to all concerned, upon a realistic basis, with regard not only to the facilities of highly integrated industrial plants, but of small business concerns operating in rural areas. But the Supreme Court—disregarding these facts—legitimatized the act of the Secretary by holding that the plaintiffs had no sufficient interest to challenge it. Cf. Stark v. Wickard, 321 U.S. 288, 307, 64 S.Ct. 559, 569, 88 L.Ed. 733: "So long as the provisions of the Order are within the statutory authority of the Secretary such hearings and balloting furnish adequate opportunity for protest. * * *. But where as here the issue is statutory power to make the deduction required by Order, § 904.9, under the authority of § 8c (7) (D) of the Act, a mere hearing or opportunity to vote cannot protect minority producers against unlawful exactions which might be voted upon them by majorities. *It can hardly be said that opportunity to be heard on matters within the Secretary's discretion would foreclose an attack on the inclusion in the Order of provisions entirely outside of the Secretary's delegated powers.*" [Italics supplied]

hearing held by the Public Utilities Commission of the District of Columbia, in 1943, to determine rates which the Potomac Electric Power Company might charge for the sale of electric energy in the District, two agencies of the United States of America were permitted to intervene. They participated in the hearings throughout, filed briefs and argued orally. Among other things, they contended for the reexamination and amendment or abandonment of the consent-decree, sliding-scale arrangement which has been used by the Commission since 1925 as a basis for calculating and fixing rates. This contention was rejected by the Commission. On July 22, 1944, the Commission issued its findings, opinion and order. It.required Potomac to file a new rate schedule which, when applied to kilowatt hour consumption during the test year 1943, will reduce its gross operating revenues substantially. Potomac appealed to the District Court in Civil Action 25,477, challenging the Commission's order on several grounds. The United States and the People's Counsel of the District were permitted to intervene. After a hearing, the Court dismissed Potomac's petition on the merits. We are not concerned, on the present appeal, with the action of the District Court in Civil Action 25,477.

In a separate petition for appeal, Civil Action 26,401, the United States attacked the Commission's order, contending that it had erred in ruling [1] that it was without power to consider exclusion, from the rate base, of Potomac's surplus built up out of earnings under the consent-decree, sliding-scale arrangement; [2] that it must, as a matter of law, include all the surplus in the common stock equity for the purpose of computing the cost of capital component of the permitted basic rate of return; [3] that exclusion of all or part of the surplus from the rate base and from the common stock equity is not required by paragraph 75, section 8 of the Utility Law; [4] that Potomac is entitled to a return on that part of its outstanding stock for which no consideration was paid to it; [5] that paragraph 16 of the Utility Law

does not require the addition, to the depreciation reserve, of Potomac's actual earnings on the reserve but only of the four per cent accruals provided for in the consent-decree arrangement of 1925; [6] that the Government's exhibit 74—purporting to show that control of Potomac was illegally acquired and held, and that the propriety of capitalizing the surplus was thus affected—was inadmissible in evidence; [7] that the rates, which Potomac was permitted to charge, under the Commission's order and pursuant to the consent-decree arrangement, are just and reasonable and will enable Potomac to earn a fair return. The District Court permitted Potomac and James W. Lauderdale, People's Counsel, to intervene in Civil Action 26,401. It dismissed the action, and the Government's petition; giving in support of its order the following statement of reasons: "The Court allows the Motion of Potomac Electric Power Company to dismiss the appeal of the United States because said Petition fails to state any facts (a) showing that Petitioner is a person or corporation affected by Order No. 2796 of the Public Utilities Commission of the District of Columbia from which it has filed said appeal, within the meaning of the Act of Congress approved March 4, 1913, as amended (Sec. 43—705, D.C.Code); (b) showing that the Petitioner has any interest entitling it to prosecute said appeal, or (c) entitling the Petitioner to relief herein. Moreover the United States does not have any property right or such interest to file independent appeal where its only basis is that of a consumer of the Potomac Electic Power Company and the Court feels strengthened in this view by the amendatory provision in the Act creating the said Commission providing for a People's Counsel and prescribing his duties in respect thereto."

The Government appealed to this Court. Potomac moved to dismiss the appeal and presented two points for our determination: [1] Whether the United States is a person or corporation affected by the Commission's order within the meaning of the statute;[4]

---

4 D.C.Code (1940) § 43—705: " * * * Any public utility or any other person or corporation affected by any final order or decision of the Commission * * * may * * * file with the clerk of the District Court of the United States for the District of Columbia a petition of appeal. * * * Upon the conclusion of its hearing of any such appeal the court shall either dismiss the said appeal and affirm the order or decision of the Commission or sustain the appeal and vacate the Commission's order or decision. * * * Any party, including said Commission, may appeal from the order or decree of said court to the United States Court of Appeals for the

■ whether the United States has any interest entitling it to appeal from the Commission's order. Preliminarily, it will be noted that *any party* may appeal to this Court from an order of the District Court in such a proceeding as the present, and, thereupon, the Code specifies that we *shall have* and *take* jurisdiction.[5] As the United States was a party in Civil Action 26,401, it comes clearly within this specification. However, its appeal would be barren of purpose if the United States were not a proper party in the District Court. On this appeal it has chosen to join issue on that point. Moreover, it has gone one step farther and has limited the issue to the question whether the United States, *as a customer of Potomac,* had standing to institute and prosecute its petition of appeal in the District Court; in other words, whether as such a customer, it is a person or corporation affected by the Commission's order. As will appear, we have concluded that it is.

■ Appellees contend that whether or not appellant comes within the provisions of the Code, it must, in order to have standing in court, show a violation of some legally protected right; that where the only interest of a person is in the rate which he enjoys for electricity used, this is insufficient to establish his right to challenge the Commission's orders; that his interest must be *proprietary* in nature, some *legal* or *equitable right* must have been invaded; that he must show he has been subjected to *legal injury;* and that appellant's right in the present case is limited to protection against unjust discrimination. But the rule is that the right of appeal in such cases as the present is statutory in character and the extent of the right, in each case, depends, not upon the ordinary requirements of injunction suits, but, instead, upon the meaning of the language used in the statute.[6] The cases relied upon by appellees interpreted distinguishable legislative language there pertinent,[7] or dealt with situations in which no such right of appeal had been given.[8]

There can be no question that Congress had power to give a right of appeal to consumers, from orders of the Commission.[9] The question is whether the lan-

District of Columbia, which shall thereupon have and take jurisdiction in every such appeal."

[5] Ibid.

[6] Associated Industries v. Ickes, 2 Cir., 134 F.2d 694, 702: "In those cases, Federal C. C. v. Sanders Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037, and Scripps-Howard Radio, Inc. v. Federal C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229, it has been held that a 'person aggrieved,' seeking review under such a statutory provision need not show that he has such a 'standing' as is ordinarily required either in injunction suits to restrain action by officials alleged to be unlawful or in declaratory judgment suits brought to determine the validity of such action." Cf. Stark v. Wickard, 321 U.S. 288, 308, 64 S.Ct. 559, 570, 88 L.Ed. 733: "The authority for a judicial examination of the validity of the Secretary's action is found in the existence of courts and the intent of Congress as deduced from the statutes and precedents * * *." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 97, 88 L.Ed. 61: "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control."

[7] City of New York v. New York Telephone Company, 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673; Boston Tow Boat Co. v. United States, 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975.

[8] City of New York v. New York Telephone Company, 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L. Ed. 374; United States ex rel. American Silver Producers' Association v. Mellon, 59 App.D.C. 24, 32 F.2d 415; United States ex rel. Alsop Process Company v. Wilson, 33 App.D.C. 472.

[9] Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 477, 642, 60 S.Ct. 693, 84 L. Ed. 869, 1037; Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 14, 15, 62 S.Ct. 875, 86 L.Ed. 1229; Associated Industries of New York State, Inc., v. Ickes, 2 Cir., 134 F. 2d 694, 704; Federal Communications Commission v. National Broadcasting Co., Inc. (KOA), 319 U.S. 239, 246, 63 S.Ct. 1035, 87 L.Ed. 1374; Western Pacific California Railroad v. Southern Pacific Co., 284 U.S. 47, 51, 52 S.Ct. 56, 76 L.Ed. 160. See Hollis v. Kutz, 255 U.S. 452, 454, 41 S.Ct. 371, 65 L.Ed. 727; Yankee Network, Inc. v. Federal Communications Commission, 71 App.D.C. 11, 14, 15, 107 F.2d 212, 215, 216; 47 U.S.C.A. § 402 (b); 15 U.S.C.A. § 836 (b).

guage of the Code reveals an intention to do so. The crucial language is: "Any public utility or any other person or corporation affected by any final order or decision of the Commission * * *."[10]

Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them.[11] Giving to the words quoted the meaning commonly attributed to them, and assuming that Congress intended to use them in their ordinary and usual sense, there can be no question that a consumer of Potomac is a person or corporation affected by the Commission's order.[12] It is true that the term "person affected" is one of uncertain meaning. Congress, as well as the state legislatures, have used it and other similar terms,[13] to define and to limit the privilege of appeal from orders of administrative agencies. And the courts have added to the confusion by imposing further limitations of meaning.[14] We see no reason, in the present case, however, to attribute any technical or other special meaning[15] to the language of the Code, which governs appeals from orders of the Public Utilities Commission. Applying the familiar rule of statutory construction that, if possible, effect should be given to the whole statute,[16] and that such an interpretation should be chosen as will effect its purpose, rather than one which defeats it,[17] we find that Congress has used language, throughout the applicable Code sections, indicating an intention that consumers shall have a right to challenge the Commission's actions.[18] The word "affected," as used in

---

[10] D.C.Code (1940) § 43—705.

[11] DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042; Old Colony Railroad v. Commissioner of Internal Revenue, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484; United States v. Stewart, 311 U.S. 60, 63, 61 S.Ct. 102, 85 L.Ed. 40; Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

[12] Webster's New International Dictionary (2d ed. 1942): "Affect * * * to act, or produce an effect, upon; * * *." Ryan v. Carter, 93 U.S. 78, 84, 23 L.Ed. 807, to act injuriously upon. Cf. United States v. Ortega, 11 Wheat. 467, 468, 24 U.S. 467, 468, 6 L.Ed. 521. A shipper is "affected" by rates set by Interstate Commerce Commission: Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 479, 55 S.Ct. 822, 79 L.Ed. 1553.

[13] Person affected: See Walsh-Healey Act, 41 U.S.C.A. § 39; Susquehanna Collieries Co. v. Unemployment Compensation Board of Review, 137 Pa.Super. 110, 112, 113, 8 A.2d 445, 446; Rudco Oil & Gas Co. v. Gulf Oil Corporation, Tex.Civ.App., 169 S.W.2d 791, 793. Person aggrieved: See National Labor Relations Act, 29 U.S.C.A. § 160 (f); Bituminous Coal Commission, 15 U.S.C.A. § 836 (b); Natural Gas Act, 15 U.S.C.A. § 717r (a), (b); Fair Labor Standards Act, 29 U.S.C.A. § 210 (a); Federal Power Act, 16 U.S.C.A. § 825l(a), (b); Public Utility Holding Company Act, 15 U.S.C.A. § 79x(a). Person adversely affected: See Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499g (c). Person aggrieved or adversely affected: See Communications Act of 1934, 47 U.S.C.A. § 402(b) (2); Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229; Symons Broadcasting

Co. v. Federal Radio Commission, 62 App. D.C. 46, 64 F.2d 381. Person interested: See Hollis v. Kutz, 255 U.S. 452, 41 S.Ct. 371, 65 L.Ed. 727.

[14] Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 15, 62 S.Ct. 875, 86 L.Ed. 1229; Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037; Associated Industries of New York State, Inc. v. Ickes, 2 Cir., 134 F.2d 694, 702–705; see Stark v. Wickard, 78 U.S. App. 44, 46, 136 F.2d 786, 788 and authorities there cited, reversed, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.

[15] Cf. Helvering v. Hammel, 311 U.S. 504, 510, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481; Neufield v. United States, 73 App.D.C. 174, 189, 118 F.2d 375, 390, certiorari denied, Ruben v. United States, 315 U.S. 798; United States v. Lederer Terminal Warehouse Company, 6 Cir., 139 F.2d 679, 681; Egyptian Supply Co. v. Boyd, 6 Cir., 117 F.2d 608, 611.

[16] Ex parte Public National Bank of New York, 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202.

[17] United States v. Katz, 271 U.S. 354, 357, 46 S.Ct. 513, 70 L.Ed. 986.

[18] See D.C.Code (1940) §§ 43—408 to 43—412, 43—419, 43—420, 43—704, 43—705, 43—707. Cf. §§ 43—302, 43—416.

§ 43—704: " * * * Any public utility or *any other person or corporation affected* by any final order or decision of the commission may * * * file with the commission an application in writing requesting a reconsideration * * *." [Italics supplied]

§ 43—705: " * * * Any public utility or *any other person or corporation affected* by any final order or decision of the Com-

the present statute, seems to have been chosen by Congress, deliberately, to expand the privilege of complaint and appeal beyond that contemplated by words which it has used in other statutes, and beyond the conventional tests used in equity suits seeking restraint of governmental action, in which the Supreme Court has restricted the privilege closely.[19]

The motion to dismiss this appeal, therefore, will be denied.

Motion to dismiss denied.

Mr. Justice ARNOLD sat during the argument of this case; concurred in the result reached in this opinion, but resigned from the Court before the opinion was completed.

---

mission * * * may * * * file with the clerk of the District Court of the United States for the District of Columbia a petition of appeal. * * * Any party, including said Commission, may appeal from the order or decree of said court to the United States Court of Appeals for the District of Columbia * * *." [Italics supplied]

§ 43—707 provides for a stay of a commission order whenever "substantial and irreparable property loss would be occasioned to the petitioner by the operation of" a rate order. The language is not limited to cases where rates are reduced and the utility would not be harmed by an order increasing rates. The intendment of the word "petitioner" therefore embraces rate payers.

§ 43—416: "Notice of * * * hearing shall be given to the public utility and *to such other interested persons* as the commission shall deem necessary * * *." [Italics supplied]

Cf. Associated Industries of New York State, Inc. v. Ickes, 2 Cir., 134 F.2d 694, 706.

[19] Cf. Alabama Power Co. v. Ickes, 302 U.S. 464, 483, 484, 58 S.Ct. 300, 82 L.Ed. 374, injuriously affecting rights; Inland Empire District Council, Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 324 U.S. —, 65 S.Ct. 1316; 13 U.S.L.Week 4479; Employers Group of Motor Freight Carriers Inc. v. National War Labor Board, 79 U.S.App. D.C. 105, 107, 143 F.2d 145, 147 and cases cited: " * * * * the cases in which the Supreme Court has sustained suits, not specially authorized by statute, to annul or enjoin alleged illegal administrative action may be classified for present purposes in two groups. Either (1) the administrative action was directly injurious to legally protected interests of the plaintiff or (2) it furnished a basis for probable judicial proceedings against the plaintiff." National War Labor Board v. Montgomery Ward & Co., 79 U.S.App.D. C. 200, 202, 144 F.2d 528, 530 and cases cited at note 7.